IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:25-cv-03212-MDH |
| | ) | |
| VITALY ZHIRY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the Government's Petition to Determine the Present Mental Condition of an Imprisoned Person. (Doc. 1). This matter has been referred to the undersigned for preliminary review. For the reasons that follow, it is recommended that Vitaly Zhiry be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246.

On May 7, 2025, the court in the United States District Court for the Eastern District of California determined that there is not a substantial probability that Mr. Zhiry will attain the capacity to permit criminal proceedings against him to go forward in the foreseeable future. (Doc. 1-1). Mr. Zhiry is presently incarcerated in the Mental Health Evaluation Unit at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP").

On May 27, 2025, Mr. Zhiry was evaluated at the MCFP to determine if he met the criteria for civil commitment pursuant to 18 U.S.C. § 4246. (*See* Doc. 1). Attached to the petition is the Risk Assessment Report prepared by a panel of mental health professionals ("Panel") at the MCFP dated August 7, 2025. (Doc. 1-2). The Panel concluded that Mr. Zhiry is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily

injury to another person or serious damage to property of another, and for which he requires care and treatment in a suitable psychiatric hospital. (*Id.*).

Based on Mr. Zhiry's symptoms, the Panel diagnosed him with schizoaffective disorder, bipolar type. (*Id.* at 11). While at MCFP, Mr. Zhiry showed no significant change in his presentation. (*Id.* at 9). He declined all group programming offered to him, remained socially withdrawn, and largely refused to engage with staff or participate in the evaluation process. (*Id.* at 8). He periodically yelled from his cell, but he did not incur any incident reports. (*Id.*). When he did engage, his speech was significantly disorganized and reflective of intense delusional thinking. (*Id.* at 11). Mr. Zhiry voluntarily took the following medication with good compliance: olanzapine (antipsychotic medication) 30 mg, daily; and divalproex ER (mood stabilizing medication) 500 mg, twice daily. (*Id.*). Mr. Zhiry remained acutely psychotic with no appreciable improvement in mental status. (*Id.* at 8).

The Panel also reviewed Mr. Zhiry's criminal history. (*Id.* at 4-5). Mr. Zhiry has been arrested previously for assault, battery, threats against public employees, illegal possession of tear gas, firearm violations, and reckless driving. (*Id.*). Some charges resulted in convictions, though Mr. Zhiry was found incompetent to proceed on charges in July 2006, April 2008, and December 2011. (*Id.*).

The Panel interviewed Mr. Zhiry on May 27, 2025. (*Id.* at 3). Mr. Zhiry was informed of the purpose and procedures of the risk assessment, including that a report would be prepared, submitted to the referring court, and distributed to both the prosecuting and defense attorneys. (*Id.*). The Panel observed Mr. Zhiry had difficulty understanding this information due to acute psychosis. He repeatedly shouted, "Leave me alone!" and "Stop talking to me!" (*Id.*).

The Panel observed Mr. Zhiry presented as alert but was not fully oriented. (*Id.* at 10). Mr. Zhiry thought it was May 2021. (*Id.*). Mr. Zhiry's affect was devoid of emotion. (*Id.*). Although he was talkative, the content of Mr. Zhiry's speech was very disorganized and reflective of delusional content. (*Id.*). His personal hygiene was poor, and he denied current suicidal/homicidal ideation, plans, or intent. (*Id.*).

The Panel asked Mr. Zhiry questions regarding his background, mental illness, and plans for release. When asked about his criminal history, Mr. Zhiry commented on "traitors" who were "everywhere," including "in my house, spiderwebs around the house, they have problems." (*Id.*). Mr. Zhiry denied a history of dangerous or aggressive behavior. (*Id.*). The Panel found that Mr. Zhiry lacked insight into his violence history and could not connect how his mental illness impacted his risk of violence. (*Id.*). Mr. Zhiry stated that he dislikes antipsychotics and described his prescribed Haldol as "bank robbery." (*Id.*). Mr. Zhiry indicated he would like to be released to the community and said he would be willing to live in a residential facility like the group home where he formerly resided. (*Id.*). He agreed to not have weapons. (*Id.*). He asserted, "I'm not crazy or dangerous. I'm doing Veteran's Affairs, Alpha. I went to school for twelve years, elementary and other schools listed. 4.0, golden medal diploma. They gave me tea, yogurt, and lots of food and meds. He gave me a couple dreams known as Hollywood. Make videos and recordings can play their computer and make video that isn't actual." (*Id.*).

The Panel concluded that Mr. Zhiry meets the criteria for civil commitment pursuant to 18 U.S.C. § 4246. (*Id.* at 19). The Panel believes that Mr. Zhiry currently suffers from a mental disease, specifically a psychotic disorder, which causes severe functional impairment. (*Id.* at 13). The Panel noted historical factors that increase Mr. Zhiry's risk of violence, including a history of severe mental illness, history of serious violence, lengthy substance use history, lack of stable

employment, and poor compliance with historical supervision. Although he has not demonstrated violent behavior at MCFP, the Panel believes it is not likely that Mr. Zhiry could maintain this level of functioning in the community. (*Id.* at 12-13). It is the opinion of the Panel that Mr. Zhiry presently suffers from a mental disease or defect which, should he be released, would create a substantial risk of bodily injury to another person or serious damage to the property of another. (*Id.*). The Panel found that Mr. Zhiry meets the criteria for commitment under 18 U.S.C. § 4246. (*Id.*).

On defense counsel's request, Dr. Richart L. DeMier, a licensed clinical psychologist, conducted an additional psychological examination on September 25, 2025. (Doc. 7). Dr. DeMier reviewed records and attempted to interview Mr. Zhiry, though Mr. Zhiry declined to be interviewed. (*Id.*). Because Mr. Zhiry declined to participate in an interview, Dr. DeMier was unable to offer an independent assessment of Mr. Zhiry's current mental state. (*Id.* at 3).

An evidentiary hearing was held via video teleconference on September 30, 2025. (Doc. 9). Defendant's attorney Ian Lewis appeared, and the Government was represented by Syd Tippie. (Tr. at 2:7-12). The Government did not offer evidence. (*Id.* at 2:23). Mr. Zhiry did not testify. (*Id.* at 3:4-11).

Based on the Panel's observation that Mr. Zhiry is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and for which he requires care and treatment in a suitable psychiatric hospital. For the foregoing reasons, IT IS RECOMMENDED that the District Judge, after making an independent review of the record and applicable law, enter an order committing Vitaly Zhiry to the custody of the Attorney General in accordance with the provisions of 18 U.S.C. § 4246.

Counsel are reminded that each party has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the District Judge, except on the grounds of plain error or manifest injustice.

Dated this 6th day of October 2025, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
Chief United States Magistrate Judge